UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED FIRE GROUP | CIVIL ACTION |
| VERSUS | NO. 05-1499 |
| DURO-LAST, INC. | SECTION "N" (3) |

### ORDER AND REASONS

Before the Court is the Motion for Summary Judgment (Rec. Doc. No. 74) filed by Defendant, Duro-Last, Inc. ("Duro-Last"), in the above-captioned matter. Plaintiff, United Fire Group ("UFG"), opposes the motion. Upon reviewing the submissions of the parties and the pertinent law, the Court finds that issues of material fact exist in this matter which preclude summary judgment. Accordingly, the Motion for Summary Judgment is **DENIED**.

### I. BACKGROUND

Frank and Patricia Scurlock own Space Walk/Inflatable Zoo, Inc., which has its place of business in Kenner, Louisiana. In April and May of 2004, the building from which they operate their business sustained damage as a result of several severe weather events that occurred during those months. A hail storm that occurred in mid-April broke windows on the building, damaged air condition units, and damaged areas of the building's roofing membrane. A couple of weeks thereafter, a severe rainstorm passed over the area. The extreme amount of rain from the storm, combined with the damage to the roof from the hail storm resulted in the Scurlocks' building being

flooded. Following the flooding, the building owner attempted to temporarily water-proof the roof until a permanent solution could be found. In mid-May, a tornado hit the building, destroying the temporary fixes and causing additional flooding.

UFG, the Scurlocks' insurer, paid $294,995.59 to the Scurlocks for their damages. Seeking to recoup the sum paid to the Scurlocks, on March 22, 2005, UFG filed suit in the 24th Judicial District Court for the Parish of Jefferson against Duro-Last.[1] Duro-Last is the manufacturer of the roof that was on the Scurlocks' building at the time the tornado hit.[2] United Fire contends that the Scurlocks' damages were caused by the defectiveness of the Duro-Last roof. On April 22, 2005, Duro-Last removed the action to this Court, basing jurisdiction on diversity of citizenship.

On June 6, 2006, Defendant filed the Motion for Summary Judgment presently before the Court. In its motion, Defendant states that the parties' experts unanimously agree that the damage to the Scurlocks' building was ultimately caused by the hailstorm. Defendant contends that, because the Duro-Last 15-year warranty issued on the Scurlocks' roof in 1993 specifically excludes damage caused by hail, Plaintiff does not have a cause of action for breach of warranty against Duro-Last. Therefore, Defendant argues, Plaintiff's potential causes of action against Duro-Last are

---

[1]UFG seeks to recover from Duro-Last under the theory of subrogation. The Louisiana Civil Code defines "subrogation" as "the substitution of one person to the rights of another." *See* LA. CIV. CODE art. 1825. Subrogation may be either conventional or legal. *Id*. Under the Civil Code, subrogation occurs by operation of law "[i]n favor of an obligor who pays a debt he owes with others or for others and who has recourse against those others as a result of the payment." LA. CIV. CODE art. 1829(3). The Louisiana Supreme Court has recognized that legal subrogation is at the core of the relationship between a property insurer, who has paid a sum in settlement of its insured's property damage claim, and the negligent party who actually caused the property damage. *See State Farm Mut. Auto. Ins. Co. v. Berthelot*, 732 So. 2d 1230, 1233 (La. 1999) (citing *Aetna Ins. Co. v. Naquin*, 488 So. 2d 950, 954 (La. 1986)).

[2]According to the submissions of the parties, the Duro-Last roof was installed by Lundin Roofing, an independent contractor which purchased the roofing system from Duro-Last.

limited to claims under the Louisiana Products Liability Act ("LPLA"), LA. REV. STAT. § 2800.52 *et seq*,[3] and Louisiana law regarding the warranty of redhibition.[4]  Both causes of action require a finding of a defect.  Duro-Last asserts that Plaintiff cannot demonstrate that there was a defect in the roofing membrane and, therefore, that they are entitled to summary judgment.

In support of its contention that Plaintiff cannot demonstrate that the Duro-Last roof at issue was defective, Defendant refers to the expert reports and testimony of Plaintiff's retained experts, Phil Wilbourn and Andrew Armstrong.  Wilbourn, when examining the Duro-Last roof, observed that some of the roof panels sustained damage from the hailstorm, while other panels were practically unscathed.  He further noted that those panels that sustained damage were universally lighter in color than those that did not sustain damage.  According to Wilbourn, there was no consistent pattern with respect to the location of the damaged sheets and non-damaged sheets. Additionally, the undamaged sheets were located in areas that were not sheltered by any physical appurtenances from the hail during the storm.  Based on these observations, Wilbourn concluded that the roof membrane should not have sustained damage at all as a result of the hailstorm and that the fractures incurred on parts of the membrane were a result of material defects in various sheets of the membrane.  To confirm his conclusions, Wilbourn submitted samples of the panels to Armstrong, a chemist.  After testing the panels, Armstrong concluded that the light-colored, damaged panels contained a lower level of plasticizers[5] than the darker, undamaged panels; that this

---

[3]The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their product." LA. REV. STAT. § 9:2800.52 *et seq*.

[4]Louisiana Civil Code Article 2520 defines a redhibitory defect as a defect that "renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect." LA. CIV. CODE art. 2520.

[5]Plasticizers are a chemical contained in the roofing membrane that, in part, determines the membrane's durability.

-3-

difference existed at the time the roof was manufactured; and that the undamaged roofing material is "very soft and pliable," while the damaged material is "very hard and inflexible." Once Wilbourn received Armstrong's report, he produced a supplemental report, in which he indicated that Armstrong's findings confirmed his conclusions.

According to Defendant, "[t]he only testing Mr. Wilbourn did was observational," and his conclusion that there were material defects in the damaged panels is unsupported. Defendant criticizes both experts with respect to their qualifications and their analyses. Defendant contends that "[t]he fault with both ... expert[s'] opinions is that neither of them provided *any testimony whatsoever regarding the industry standard*." Defendant further states that both experts "jumped to the conclusion that because there was a difference in performance (Wilbourn) or plasticizer level (Armstrong) ... the lesser performing sample was defective."

Duro-Last asserts that the existence of a failure is not synonymous with a defect. It urges that, instead of being defective, the roof panels that were damaged performed as expected and designed and that the undamaged panels performed beyond expectations. Plaintiff's failure to prove otherwise, argues Duro-Last, warrants the granting of summary judgment.

## II. LAW AND ANALYSIS

### A. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment may be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* FED. R. CIV. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

Initially, the movant bears the burden of demonstrating the absence of material fact issues.  *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir. 1993).  The movant is not required, however, to negate the elements of the nonmovant's case.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 323).  If the dispositive issue is one for which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim.  *Celotex*, 477 U.S. at 325.  If the movant meets his burden, then the burden then shifts to the nonmovant, who, to avoid summary judgment, must go beyond the pleadings and designate specific facts that show that there is a genuine issue for trial.  *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 325).  Of course, unsubstantiated assertions do not constitute competent summary judgment evidence.  *Abbott*, 2 F.3d at 619 (citing *Celotex Corp.*, 477 U.S. at 324).

Before granting a motion for summary judgment, the district court must be satisfied that no reasonable trier of fact could find in favor of the nonmoving party.  *Anderson*, 477 U.S. at 249; *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (stating that "the facts and inferences [must] point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict").  In determining whether a material issue of fact exists, the evidence and all inferences drawn therefrom must be considered in the light most favorable to the non-moving party.  *Baker v. American Airlines, Inc.*, 430 F.3d 750, 753 (5th Cir. 2005) (quoting *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005)).

### B. Analysis

As an initial matter, the Court notes that, in its opposition memoranda, Plaintiff does not contest Defendant's assertion that the only potential causes of action available to Plaintiff are claims under the LPLA and Louisiana redhibition law. The Court will therefore assume for purposes of resolving the motion before it that, indeed, Plaintiff does not assert any claims outside of the LPLA or the Civil Code articles and accompanying jurisprudence concerning redhibition.

### 1. LPLA

Under the LPLA, "[t]he manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by claimant or another person or entity." LA. REV. STAT. § 9:2800.54(A). A product can be unreasonably dangerous "in construction or composition;" "in design;" "because an adequate warning about the product has not been provided;" or "because it does not conform to an express warranty of the manufacturer about the product." *Id*. at § 9:2800.54(B). The claimant in a products liability action bears the burden of demonstrating that a particular product was unreasonably dangerous. *Id*. at § 9:2800.54(D).

To the extent that Plaintiff attempts to assert claims with respect to either of the latter two ways a product can be unreasonably dangerous, such claims clearly fail, and summary judgment is appropriate, as Plaintiff has alleged absolutely no facts in support thereof.[6] Accordingly, such claims, if any, are **DISMISSED WITH PREJUDICE**.

To the extent Plaintiff contends that the Duro-Last roof in question was unreasonably

---

[6]As to the "express warranty" condition, the Court notes that Plaintiff has specifically stated in its Opposition that this is not a breach of warranty suit.

dangerous in design, the Court finds that issues of material fact preclude summary judgment. A product is unreasonably dangerous in its design if:

> (1)  There existed an alternative design for the product that was capable of preventing the claimant's damage; and
>
> (2)  The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product.

*Id*. at § 9:2800.56. The characteristic of a product that renders it unreasonably dangerous in design "must exist at the time the product left the control of its manufacturer or result from a reasonably anticipated alteration or modification of the product." LA. REV. STAT. § 9:2800.54(C).

To demonstrate that a specific product has an unreasonably dangerous design, generally a claimant must identify a specific alternative design for the allegedly dangerous product that was capable of preventing the injury complained of and perform the requisite risk-utility analysis. *Milton v. Rapiscan Sec. Prods.*, No. 04-CV-591, 2005 WL 1400433, at * 2 (E.D. La. June 6, 2005) (citing *Krummel v. Bombardier Corp.*, 206 F.3d 548, 551 (5th Cir. 2000)).[7] The Fifth Circuit has recognized, however, that rigorous evidentiary requirements are not always necessary and that "there may be cases in which the judge or the jury, by relying on background knowledge and 'common sense,' can 'fill in the gaps' in the plaintiff's case, estimating the extent of the risk avoided, the costs of implementing the proposed design change, or the adverse effects of the design modification on the utility of the [product]." *Lavespere v. Niagara Machine & Tool Works, Inc.*,

---

[7] The Court notes that Plaintiff has not even attempted to argue that an alternative design for the Duro-Last roofing membrane existed that was capable of preventing its damages, much less describe such an alternative design in detail. Nor has Plaintiff attempted to provide any type of risk-utility analysis with respect to any potential alternative design.

910 F.2d 167, 184 (5th Cir. 1990), *overruled by Little v. Liquid Air Corp.*, 37 F.3d 1069, (5th Cir. 1994). For this relaxed evidentiary burden to apply, the product in question must be relatively uncomplicated. *Id.*

Plaintiff makes no arguments specifically with respect to whether the design of the Duro-Last roof was unreasonably dangerous.[8] Despite this somewhat glaring omission, the Court must construe the evidence in the light most favorable to Plaintiff, the non-movant, and the evidence so-construed compels the Court to deny summary judgment on this point. As noted above, the report of Plaintiff's expert Armstrong indicates that the damaged roof panels had a lower plasticizer content than the undamaged panels and that this likely was the case when the panels were manufactured. Although Plaintiff has not specifically referenced a safer, alternative design that was available to Duro-Last or done a risk-utility analysis, the Court finds that these opinions of Armstrong in themselves create a material issue as to whether such a design existed and could have been implemented by Duro-Last without much burden.[9] The Court notes that Duro-Last itself, as well as its own expert, Cary Black, proclaim that the lighter, damaged panels were manufactured and performed exactly as expected and that the darker, undamaged panels performed beyond expectations. Based on the foregoing, a fact finder seemingly could reach the logical conclusion that, indeed, the undamaged panels with the higher amount of plasticizer constitute a superior design and that the burden of Duro-Last in implementing such a design as a general standard would be

---

[8]In fact, the submissions of Plaintiff are so vague and general that the Court can not decipher whether Plaintiff intends to pursue an "unreasonably dangerous in design" claim.

[9]In so finding, the Court does not intend to express any opinion as to the strength of such evidence. Indeed, the Court finds the evidence submitted as a whole to be incomplete, to say the least. The Court only finds that the threshold burden of presenting a material issue has been accomplished, though inadvertently, by Plaintiff with respect to whether the design of the damaged Duro-Last roof panels rendered them unreasonably dangerous.

minimally burdensome in that some Duro-Last panels already emulated such design.[10]

The Court additionally finds that an issue of material fact exists as to whether the characteristic of the damaged Duro-Last roof panels that arguably renders them unreasonably dangerous in design–namely, an inadequate plasticizer content–existed at the time the panels left the control of Duro-Last or resulted from a reasonably anticipated alteration or modification of the panels. As stated above, Armstrong concluded that, while both the damaged and undamaged Duro-Last panels exhibited a loss of plasticizer content over their lifetime, a difference in the level of plasticizer content between the damaged and undamaged panels existed at the outset. Armstrong made this conclusion by testing portions of both the damaged and undamaged panels that had not been exposed to the elements, in other words, areas of the panels that had overlapped each other when welded together. Although there is no documented evidence from Duro-Last as to exactly what the plasticizer content of the panels was at the time they left the Duro-Last factory, the Court finds that the conclusions of Armstrong at least raise an issue as to whether the damaged panels were designed with an inadequate amount of plasticizer and left the Duro-Last factory in such condition. Alternatively, the Court finds that an issue of material fact exists as to whether the damage to the

---

[10]The Court acknowledges that the opinions of Black and Armstrong differ as to the extent of loss of plasticizer in the panels and that Black maintains the following position:
> The chemical and physical property differences determined between the undamaged and damaged materials in this study are not sufficient in magnitude to explain the performance differences relative to the hail damage. Other variables such as orientation on the roof, the random nature of hail, the extent to which the membrane panels were stretched during installation, and the nature and variability of the substrate, would have played a more significant role in the nature and extent of the damage observed.

While Defendant may contend that this evidence negates any issue of material fact as to a design defect, the Court finds that the opposite is the case. The difference of opinion of the experts as to whether the chemical properties of the damaged panels significantly contributed to the damage sustained indeed supports a finding that there are issues of material fact on this point.

lighter Duro-Last panels resulted from a reasonably anticipated alteration or modification of the panels. As noted by Defendant's own expert, Cary Black, "[a]s PVC roofing membrane ages, it tends to loose plasticizer from the surface of the material." This being the case, it seems that a fact finder could reasonably conclude that it was reasonably anticipated that the damaged panels would be altered by losing a substantial amount of plasticizer and that this should have been taken into consideration by Duro-Last and planned for appropriately when the panels were manufactured. In light of the above, the Court finds that summary judgment is not appropriate as to Plaintiff's unreasonably dangerous design claim, to the extent Plaintiff alleges such a claim.

Although Plaintiff fails to make any specific assertions that would give the Court any useful guidance as to what particular claims they are pursuing, from what the Court is able to gather from the submissions, Plaintiff appears to be primarily focused on its ability to prove an unreasonably dangerous construction or composition claim. A product is unreasonably dangerous as to construction or composition if "at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." LA. REV. STAT. § 9:2800.55. In order to demonstrate that a product is unreasonably dangerous in its construction or composition, generally, a claimant "'must demonstrate not only what a manufacturer's specifications or performance standards are for a particular product, but how the product in question materially deviated from those standards so as to render it "unreasonably dangerous".'" *Milton*, 2005 WL 1400433 at *2 (quoting *Welch v. Technotrim, Inc.*, 778 So. 2d 728, 733 (La. App. 2d Cir. 2001)). *See also*, *Morris v. United Servs. Auto. Assoc.*, 758 So. 2d 549, 558 (La. App. 2d Cir. 2000); *Scott v. American Olean Tile Co., Inc.*, 706 So. 2d 1091, 1094 (La. App. 3d Cir. 1998).

In the instant case, while Plaintiff has produced expert testimony indicating that the damaged roof planks contained a lower[11] level of plasticizers than the undamaged roof planks, Plaintiff has not produced any evidence *specifically* supporting the conclusion that the damaged planks were composed or constructed. The Court agrees that expert Wilbourn's conclusion that the damaged planks, which were lighter in color and contained less plasticizer, were defective is a logical and reasonable one. However, as stated by Defendant, a failure does not necessarily indicate a defect. Plaintiff has not put forth any evidence, in its Complaint or in its submissions to the Court, as to what the Duro-Last specifications or the performance standards were for the Duro-Last roof that was on Plaintiff's building. Without such information, a fact finder is unable to determine that the roof in question deviated from such specifications or performance standards, and thus is "defective" under the LPLA. Although Plaintiff contends that an issue of material fact exists as to the industry standard for manufacturing a roof at the time the roof in question was manufactured, Plaintiff has produced no evidence with respect to an industry standard that would form an issue regarding same.

Despite the foregoing, the doctrine of *res ipsa loquitur* saves Plaintiff's construction or composition claim from dismissal at this time. Plaintiff states, and the Court acknowledges, that the theory has been applied in the products liability context–specifically with respect to construction

---

[11] Plaintiff points to the following statements allegedly contained in the Duro-Last specification manual: 1) the roofing membrane is "designed to perform in all types of weather" and "has passed the 'Simulated Hail Damage Tests' ... without any evidence of any cracking or puncturing of the roof surface;" 2) the roofing material "does not have conventional plasticizers that migrate from the coating;" 3) the roofing material "is resistant to ultra-violet rays and micro-organisms;" and 4) the "tear and puncture strength of the fabric are superb." Plaintiff contends that these are specifications that Duro-Last failed to comply with. The Court disagrees. These are mere descriptions, not technical product specifications, as contemplated by the LPLA. Thus, they do not form a basis for an unreasonably dangerous composition or construction claim.

and/or composition issues.  *See e.g.*, *State Farm Mut. Auto. Ins. Co. v. Wrap-On Co., Inc.*, 626 So. 2d 874, 876 (La. App. 3d Cir. 1994); *Weber v. Fidelity & Cas. Ins. Co. of New York*, 259 La. 559 (1971); *Williams v. Emerson Elec. Co.*, 909 F. Supp. 395 (E.D. La. 1995); *Lawson v. Mitsubishi Motor Sales of America, Inc.*, 896 So. 2d 149 (La. App. 3d Cir. 2004).  "*Res ipsa loquitur* is applicable when the circumstances surrounding an accident are so unusual as to give rise to an inference of negligence or liability on the part of the defendant and that, under the circumstances, the only reasonable and fair conclusion is that the accident resulted from a breach of duty or omission on the part of the defendant." *Lawson*, 896 So. 2d at 154.  The following three criteria must be present in order for the doctrine to apply in a particular case:  "1) the facts must indicate that the plaintiff's injuries would not have occurred in the absence of negligence; 2) the plaintiff must establish that the defendant's negligence falls within his scope of duty to plaintiff; and 3) the evidence should sufficiently exclude inference of the plaintiff's own responsibility or the responsibility of others besides defendant in causing the accident." *Id*.

After considering the bare evidence presented to the Court by both parties in connection with the Motion for Summary Judgment, the Court finds that at least an issue of material fact exists with respect to the doctrine of *res ipsa loquitur*.  Based on the incomplete evidence which has been authenticated and is properly before the Court, the Court notes that the following facts are before it:  1)  The Duro-Last roof in question was installed on the Scurlocks' building in 1993; 2) The roof performed well until the April 2004 hailstorm occurred; 3) Water leaked into the Scurlocks' building during and after the hailstorm as a result of hail-imposed fractures in portions of the roofing membrane; 3) The damaged panels of the roofing membrane were uniformly lighter in color than the undamaged panels; 4)  The lighter, damaged panels, when tested, were found to have a lower plasticizer content and to be less flexible than the darker, damaged panels.  Looking

-12-

at these facts, the Court finds that a reasonable fact-finder could conclude that the circumstances of the accident at hand were unusual. In that numerous similar panels uniformly held up during the hailstorm, a reasonable fact-finder could also conclude that Duro-Last was at fault with respect to the damaged panels. Further, there is no evidence to indicate that the Scurlocks, UFG's subrogors, were in any way responsible for the damages that they sustained. Finally, considering just the evidence properly before it, the Court concludes that a fact finder could find that the circumstances in the case *sub judice* are such that a reasonable and fair conclusion is that the accident was due to actions or omissions of Defendant. Although Defendant and its expert Black have tendered possible causes for the failure of certain Duro-Last panels[12] other than the chemical composition,[13] *no* support

---

[12]The Court notes that Defendant's exhibit A, a report done by Carl Cash, a consulting engineer, provides the following:
> The phthalate plasticizers in the membrane tend to depart slowly with time. The rate at which they are lost depends on the solar and moisture exposures, and the substrates over which they are placed. Many substrates have little or no effect on plasticizer migration. Polystyrene foam is one of the major exceptions; it greatly increases plasticizer migration from the membrane into the insulation. The roofing industry identified this characteristic very shortly after PVC membranes were introduced–and all manufacturers prohibited the use of polystyrene foam insulation with PVC membranes without a styrene vapor barrier between these materials. *In this case, the loss of plasticizer in many panels, and the reduced resistance to impact damage set the stage for this hailstorm loss. ... The polystyrene foam and PVC should never have been installed without a solvent vapor barrier between the foam and the membrane.*

Def's Memo, Exh A (emphasis added). Certainly, based on the foregoing, "a reasonable and fair conclusion" is that the accident was based on improper installation, i.e. failure to use polystyrene foam insulation without a styrene vapor barrier between it and the PVC membrane, rather than errors or omissions of Duro-Last. Though this is a strong argument, the Court can not consider over Plaintiff's objection the above information with respect to its ruling, as the Cash report is not authenticated and does not constitute proper summary judgment evidence.

[13]*See supra* note 10.

is provided as to any of those potential causes in connection with this motion.[14] Therefore, summary judgment must be denied to the extent that Plaintiff alleges a claim based on the allegedly unreasonable dangerous construction or composition of the Duro-Last roof.[15]

### 2. Redhibitory Defects

Pursuant to Louisiana Civil Code Article 2520, a seller warrants a buyer against redhibitory defects in a thing sold. LA. CIV. CODE art. 2520.[16] A defect is redhibitory when "it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. *Id.* The existence of such a redhibitory defect allows the buyer to obtain rescission of the sale. *Id.* A defect is redhibitory also when "without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price." *Id.* The existence of this type of redhibitory defect gives the buyer the right to a reduction of the price only. *Id.*

Again, the Court is not certain whether Plaintiff attempts to assert a redhibition claim,

---

[14]The Court notes that the roof in question was 11-years-old at the time of the damaging hailstorm and that roofs, by nature, wear down over time and eventually must be replaced. Defendants may contend that one could reasonably conclude that the age of the roof caused the damages in question. However, the uniform positive performance of the dark panels compared to the uniform negative performance of the light panels tend to indicate that it was not the age of the roof that proximately caused the injuries in question. Therefore, this factor does not favor summary judgment with respect to the composition or construction claim.

[16]The Court acknowledges that Duro-Last did not sell the roof in question to the Scurlocks. This fact alone, however, does not prevent Plaintiff from bringing a redhibition claim against Duro-Last. Under the Civil Code, "a buyer is subrogated to the rights in warranty of the seller against other persons, even when the warranty is excluded." *See* LA. CIV. CODE art. 2548. This article has been interpreted to allow a buyer, through subrogation, to maintain an action in warranty against the manufacturer of an allegedly defective product. *See* LA. CIV. CODE art. 2548, comment (d); *Cotton States Chem. Co. v. Larrison Enterprises, Inc.*, 342 So. 2d 1212 (La. App. 2d Cir. 1977).

as it does not specifically support such a claim in its rather nebulous submissions. However, giving Plaintiff, the non-movant, the benefit of the doubt, as the Court must, the Court finds that summary judgment on a potential redhibition claim is not warranted. As explained above, issues of material fact exist as to whether the damaged panels of the roof were defective and as to whether such defect existed at the time the roof left Duro-Last's possession. Further, in that the Duro-Last roof in question had to be replaced, the Court finds that at least an issue of material fact exists as to whether the roof was rendered useless by the alleged defect. Defendant points to the fact that the roof was completely effective for 11 years and therefore could not have been useless. However, that it performed well in the past does not the negate the possibility that it became useless for the future. The Defendant's concern is addressed by Louisiana Civil Code Article 2545, which provides that a seller may be allowed a credit if the buyer made use of the allegedly defective thing. LA. CIV. CODE art. 2545. Accordingly, on this point, Defendant's motion must be denied.[17]

### III. CONCLUSION

In light of the foregoing, the Court finds that, while the evidence presented by the parties is incomplete at best, it nonetheless produces issues of material fact with respect to Plaintiff's unreasonably dangerous design claim, unreasonably dangerous composition or construction claim, and redhibition claim, to the extent Plaintiff attempts to assert such claims. Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **DENIED**.

---

[17]Although Defendant has not raised prescription as an issue in its motion, the Court notes that a potential action in redhibition by Plaintiff is not barred by prescription. Under Article 2545 of the Civil Code, Duro-Last, a manufacturer, is deemed to know that the thing he sells has a redhibitory defect. LA. CIV. CODE art. 2545. Therefore, under Article 2534, the applicable prescription period in the instant case is one year from the day the defect was discovered by the buyer. LA. CIV. CODE art. 2534. Plaintiff filed this action in state court on March 22, 2005, less than a year after the hailstorm caused damage to the roof. Accordingly, any redhibition claim by Plaintiff is not prescribed.

New Orleans, Louisiana, this __11th__ day of September, 2006.

*[signature]*
**Kurt D. Engelhardt**
**United States District Judge**